[Cite as *Thomas v. Dayton Pub. Schools Bd. of Edn.*, 2018-Ohio-4231.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| PAMELA THOMAS | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 27965 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-0831 |
| | : | |
| BOARD OF EDUCATION OF THE DAYTON PUBLIC SCHOOLS | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of October, 2018.

. . . . . . . . . . .

JULIUS L. CARTER, Atty. Reg. No. 0084170, 130 W. Second Street, Suite 1622, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

BRIAN L. WILDERMUTH, Atty. Reg. No. 0066303 and LAUREN K. EPPERLEY, Atty. Reg. No. 0082924, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
      Attorneys for Defendant-Appellee

. . . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** This matter is before the Court on the April 11, 2018 Notice of Appeal of Pamela Thomas. Thomas appeals from the trial court's March 13, 2018 judgment in her administrative appeal, which affirmed her termination by the Dayton City School District Board of Education (the Board) as a teacher at Belmont High School for her failure to timely enter third quarter final grades for her students. We hereby affirm the judgment of the trial court.

**{¶ 2}** On April 4, 2016, a Notice of Charges and Specifications was issued to Thomas. A revised Notice of Charges and Specifications was issued on April 19, 2016. The revised Notice provided:

> You will take notice that you are hereby charged with violating Board Policy GBCB, and GBCB-R-2, (Unsatisfactory work performance; Neglect of duty; Insubordination; Lack of cooperation; Conduct disruptive to fellow employees; and careless or unsafe work habits) of the Dayton Board of Education Policy and Procedure Manual in that:

> You have been charged with violation of the rules of the Dayton Board of Education, and laws and regulation of the State of Ohio in your position as a Professional Staff member, for the Dayton Board of Education which amounts to incompetence, insubordination, neglect of duty, and acts of misfeasance, malfeasance, and and/or nonfeasance in office.

SPECIFICATION I

> According to Administration, you have repeatedly failed to complete both your interim grades and 3rd quarter grades for any of your students.

Additionally, during the week of April 11, 2016, a staff member was concerned that you openly called fellow staff members the devils and criticized them. You refuse to cooperate with your building administrator and/or members of the Belmont team who have offered you support. You have failed to assume responsibility for performing even the basic and essential functions of your job. Therefore, it is recommended that *termination* be considered.

{¶ 3} The notice advised Thomas that a hearing would be held before a hearing officer on May 2, 2016, and the hearing was held. On May 16, 2016, Hearing Officer Jyllian R. Guerriero issued a report recommending that Thomas be terminated, effective immediately.

{¶ 4} Thomas requested a hearing before a referee as provided in R.C. 3319.16, which governs termination of public school employees. A hearing was held before Referee Robert Harrelson on September 22, 23, and 26, 2016. The evidence presented at the hearing was as follows.

{¶ 5} The Board initially called Thomas to testify as on cross-examination. Thomas stated that she received her Master's Degree in special education from the University of Dayton in 2007. She testified that she was trained as an intervention specialist, and that she was licensed by the Ohio Department of Education in 2003. Thomas testified that she was a reserve or substitute teacher at Dayton Public Schools (DPS) from 1994 to 2003. She stated that in 2011 or 2012, she worked as an intervention specialist at "Fairview pre-K through 8 school."

{¶ 6} Thomas testified that she reported for work at Belmont High School on

January 26, 2016 as an intervention specialist, to replace a substitute teacher. Thomas was assigned to teach her students living skills, a class she had not previously taught. She testified that the school had an "eSchoolPLUS" computer system, including "TAC," or Teacher Access Center. According to Thomas, changes to the computer system were implemented in the 2015-16 school year, and she did not understand how to use the updated system. She acknowledged that there were user guides available to her regarding the new system and its use.

{¶ 7} Thomas testified that when interim third quarter grades were due, she did not know how to post them to the system. Thomas testified that she contacted the "chief of the Office of Exceptional Children, the building principal, [and] the DEA president" about the problem. She stated that she also reached out to Linda Dovel, who submitted the grades for her. Thomas testified that weeks later, when final grades were due, she did not submit them since she did not know how, because she "didn't have adequate training."

{¶ 8} Judith Spurlock, the executive director of human resources for DPS, testified that she placed Thomas at Belmont High School as an intervention specialist. According to Spurlock, Thomas was assigned to teach students in a life skills class; "she had students in various grade levels in that class and she was to grade them and then also produce grades for them." Spurlock testified that Thomas failed to submit interim and final grades as required. She stated that Thomas had seniors in her class, and that the grades were required "to ensure that those students know that they have the credits. If not, their parents receive notification, it's a certified letter. And without grades, that's very concerning, especially to me."

{¶ 9} Spurlock testified that she was familiar with DPS' eSchoolPLUS and TAC

computer system. She testified that the "system was where you enter your grades and you send out your interim grades, you send out your final grades. So, you submitted everything through the electronic system." She stated that the system was updated prior to the beginning of the 2015-16 school year. Spurlock stated that there "was nothing that modified it from anybody's use, if you've already used the system, you'd be very familiar. They changed just some, how it looked at the top and a couple different things. But if you were trained on the system and you used it prior, you can easily use the system." Spurlock stated that she used the system the previous year and the current year and "didn't need any additional training * * * to do it." Spurlock testified:

> In the case of Ms. Thomas, I know that Linda Dovel, because I've spoken * * * with her on a couple of occasions during this process, she specifically met with Ms. Thomas, worked with her, gave her the handouts, Ms. Walter gave her handouts as well, because I was copied on that email, on how to use the system. And then I looked in the file and she was actually, there was also indications, I think, from a previous principal, telling her to enter grades in TAC.

> So, I know that she was assigned students in the past, I know that she's used the system in the past, that she's been cautioned before about entering grades, needing to do it in a timely manner, with deadlines. And I know that Linda, Dovel I mean, I personally spoke to her and she told me that. Plus she submitted a letter to me indicating that she did train Ms. Thomas on the system.

Spurlock stated that she found Thomas's claim that she did not understand the update

"hard to believe," and that "no teacher in my building ever had a problem with the update. And I had a staff of over 40."

{¶ 10} Spurlock testified that she "presented the case" for DPS at the May 2016 hearing before the hearing officer. Spurlock stated that the hearing included topics regarding Thomas's conduct while she was a teacher at Fairview, before she came to Belmont. Spurlock stated that Thomas had previously been disciplined for failing to complete Individualized Education Programs ("IEPs") at Fairview in 2014 and 2015, and that she was suspended for 10 days without pay at the time. According to Spurlock, "it's not to say she's going to be recharged or, or have consequences for that, but that's the evidence that I, I brought into the hearing. Because * * * it's the same pattern of her not doing her job." The referee indicated that "it's entirely relevant to bring in evidence regarding past disciplinary measures. I get it, she didn't do the IEP's, she was suspended. I don't know if we have to go there anymore."

{¶ 11} On cross-examination, Spurlock testified that a "BTIC" is a building technology integration coordinator, and that Linda Dovel was in that role in the 2015-16 school year at Belmont. Spurlock stated that the "system for entering the grades has always been the same." Spurlock acknowledged that Thomas missed the initial training with Dovel at the start of the school year, but stated that Dovel worked with Thomas on a "one-to-one" basis.

{¶ 12} In response to questions from the referee regarding the specific policies Thomas was charged with violating, Spurlock stated that "GBCB, that is staff conduct. GBCB-R-2 is specific staff conduct. That goes into serious violations, major violations, and what it documents is the process for that." She stated that the above codes were in

DPS' Policy Manual.

**{¶ 13}** Monica Utley testified that she was a principal at Fairview, having previously served as the assistant principal there. Utley provided testimony, over objection, regarding negative evaluations of Thomas's performance that Utley submitted while Thomas was at Fairview.

**{¶ 14}** Melanie Walter testified that she had served as the principal of Belmont High School since July 2013. Walter testified that two and a half weeks after Thomas's January 2016 arrival, interim grades were due, which she described as a "half-way point" grade. She stated that the grades were mailed home to the students' families "as an update," and that Thomas did not complete her interim grades for the students assigned to her for the interim grading period. Walter stated that the grades were to be entered on "an eSchool online system," and Thomas advised Walter that she (Thomas) did not know how to enter grades electronically. Walter learned that Thomas had failed to submit the interim grades when she received a report generated by Robin Thompson, "the data tech at Belmont."

**{¶ 15}** Walter explained that, at "the high school level, students must have 20 Carnegie Units in order to graduate and receive a high school diploma in Ohio. * * * Interim grades are important because they give a progress report, how the student is doing so that the student is aware, the parents are aware, midway through." Walter identified multiple online resources and reference guides for the eSchoolPLUS and TAC systems that are available to Belmont teachers. Walter stated that Linda Dovel was the building technology integration coordinator at Belmont and "was a resource for staff members. If they had questions with any sort of technology, she was the on-site resource." Walter

stated that interim third quarter grades were due on February 5, 2016, by noon, that she referred Thomas to Dovel, and that she observed Thomas working with Dovel later that day. Walter testified that she sent an email to the entire staff every day, "and during grading time or interim time, I give them reminders. And Ms. Thompson does the same thing." Walter testified that the intervention specialists meet every Friday to "discuss certain things that are specific to their students," and that Thomas attended several of those meetings.

{¶ 16} Walter stated that the eSchoolPLUS and TAC systems were used the last six years for entering grades. Regarding the update for the 2015-16 school year, Walter stated that "it was more of an appearance type of update. The process remained the same, but there were, like the background changed on * * * the screen, that type of thing. But it was basically the same * * * system." Walter stated that final third quarter grades were due on March 11, 2016, by noon. Walter testified that Thomas "did not ever submit third quarter grades." She stated that she again received a report from Thompson about the missing grades. Walter stated that, thereafter, she observed Thomas in the hallway and "reminded her that grades were due by noon," and that Thomas "turned around and said, I don't know how to do them. And I continued speaking and she turned around and walked away." Walter stated, "I was going to refer her to help" when she walked away. When asked if she believed Thomas did not know how to use the system after being helped by Dovel, Walter responded, "I was confused because help had been given the first time. And I had not heard anything back * * * she had never reached out to me. * * * I was not made aware by anyone that she did not know how to use the TAC system or submit grades."

{¶ 17} Walter identified an undated statement attached to her affidavit that she testified was provided to her by "Mr. Szymczak," and counsel for Thomas objected. The referee sustained the objection but indicated, "I'll let you proffer it to testimony so you have it on the record," but "I am not going to consider it." The statement was critical of Thomas and provided, inter alia, that she often failed to teach her students and complained about a lack of teaching materials. Walter testified that it was "an accurate statement."

{¶ 18} Walter identified the five-page course outline that was provided to Thomas, which was "the course outline that the intervention specialists at Belmont have been using for the life skills course." Walter testified that Thomas complained about not receiving curriculum materials for her class. Walter stated that the other intervention specialists worked with their "teacher based team * * * and developed ideas and went through the list of what * * ** they thought were topics that were pertinent to the groups of students" taking life skills. Walter stated that she believed that Thomas had the material she needed to teach the course.

{¶ 19} Walter stated that other intervention specialists expressed concern that Thomas's students "were getting too much free time," and that students in Thomas's class "had complained to me that they weren't being taught." She stated that "Thomas never submitted lesson plans as required."

{¶ 20} Walter identified a statement attached to her affidavit from Patrick Bailey, an interventional specialist at Belmont. When asked to describe the incident that Bailey reported, counsel for Thomas objected, and the referee indicated, "All that is going to be sustained. I'm allowing it in though for the perfecting of the record." Walter then

testified that, according to Bailey, Thomas referred to two other teachers as "the two devils."

{¶ 21} Walter identified an email she sent on March 11, 2016, to Gregory Roberson, the chief of the Office of Exceptional Children, Judith Spurlock, and David Lawrence, the chief of the School of Innovation and Walter's supervisor. The email stated in part that Thomas did not submit her third quarter grades, and that at "Interim Reporting time, she mentioned to the Data Tech that she did not know how to do the grades; however, she has been a teacher in DPS for multiple years. She was sent to Linda Dovel, Media Specialist and BTIC, for assistance with grade reporting at the time (February)."

{¶ 22} On cross-examination by counsel for Thomas, Walter stated that, at the start of the school year, in August 2015, there was training offered to all Belmont teachers on the 2015-16 updates to the TAC system. She stated that, after seeing Thomas in the hallway when Thomas told her she did not know how to enter the third quarter final grades, she did not attempt to meet with Thomas about entering the grades. When asked why the Notice of Charges and Specifications was revised to include the comment by Thomas regarding "the devils," Walter stated that the "comment was made in front of students. And regardless of how one feels about a co-worker, making derogatory comments, particularly with students, any student about another human being, a devil, is very hurtful." Walter acknowledged that she was not present when the statement was made.

{¶ 23} In response to questions from the referee, Walter stated that the teacher that Thomas replaced did not have Internet access, and that to enter her grades, "we

were able to sign her in and manipulate it so that she was putting in" the grades. She stated that Thompson would have been responsible for this task. Walter stated that she was aware that Thomas was not "performing" because she purportedly did not have curriculum materials, and that she did not take steps to find out what Thomas needed or to talk to Thomas about the issue. According to Walter, Thomas "was not an approachable employee," and "it was not a good working arrangement." Walter stated that she did not feel Thomas was "the best person for that position if she was not willing to put in the extra time to find materials." When asked how the seniors were able to graduate without third quarter final grades, Walter responded, "We manipulated the system to give fourth quarter grades as the double."

{¶ 24} Robin Thompson testified that she was the student information specialist at Belmont. She stated that she worked in the TAC system, and that in the 2015-16 update, the system was "scaled down" to make it easier for teachers to use. Thompson demonstrated for the referee the use of eSchoolPLUS and TAC. Thompson stated that every classroom at Belmont had at least one computer, and they were available to the teachers and intervention specialists, who merely had to enter log-in information to access the system. She stated that there were also two computer labs and a media center in the building.

{¶ 25} Thomas then testified on direct examination. She stated that she was suspended without pay for 10 working days in November 2015 while at Fairview, and that she was transferred to Belmont thereafter. Thomas testified that she was assigned to teach life skills to students in a self-contained classroom, but that she in fact had to go to the students throughout the building on two floors in their classrooms. She testified that

the "comment codes" on the electronic grading system were different at Belmont than at Fairview. For example, Thomas stated one of the codes, specifically "89," was "supposed to be on all report cards for students that receive special needs services. But it wasn't listed on Belmont's."

{¶ 26} Thomas stated that she did not work a full week her first week at Belmont because she "became very ill. It was a very stressful time. And I had a problem with my blood pressure." She stated that she returned to work the following Monday and provided a "Return to Work" form signed by her doctor. Thomas stated that she had never taught life skills and that she was not provided any instructional material. She stated that there were students that were in "categories" that she had not taught previously, such as visually-impaired students, students on the autism spectrum, non-verbal students, and emotionally-disturbed students.

{¶ 27} Thomas stated that interim grades were due at Belmont less than two weeks after she started there. She stated that she emailed Walter about the issue, and Walter sent her "an e-mail with the link of the quick reference guide." Thomas stated that, after reviewing the reference guide, she was still "having issues." Thomas stated that she asked Linda Dovel for help, and "Linda assisted me with the third quarter interim grades. And the third quarter final grades, I still didn't know how to do them and they didn't receive their third quarter [final] grades." The following exchange occurred:

Q. * * * While Ms. Dovel was entering the grades, were you able to, at some point, take over and begin doing them yourself with her showing you how to do them?

A. No, I was not.

Q. * * * And why was that?

A. Because Linda put the grades in. She didn't really train me, she just did it. So, I knew no more than I knew when I sat down with her.

{¶ 28} Thomas stated that she viewed one of the instructional videos on how to input grades on the system, and she stated that she believed with the right training, she could have entered her third quarter final grades. She stated that Dovel only sat down with her to input the interim grades. Thomas stated that she completed the fourth quarter interim grades electronically. She stated that her last day at the school was May 16, 2016.

{¶ 29} The following exchange occurred:

HEARING OFFICER HARRELSON ("HARRELSON"): * * * The grading, you acknowledge that you never entered third quarter final grades, correct?

MS. THOMAS: Correct.

HARRELSON: Why not?

MS. THOMAS: I didn't know how.

HARRELSON: When it came time - - you were aware, when you were entering in the third grade interim grades, that you did not know how, correct?

MS. THOMAS: Yes.

HARRELSON: And you knew the final grades were coming up?

MS. THOMAS: Yes.

HARRELSON: In about four weeks, I think. And what steps

did you take, within that four weeks, to learn how to do the final grades?

Because you know how important final grades are?

    MS. THOMAS:    Yes.

    HARRELSON:    So what did you, what did you do to make sure

that you were able to enter these grades.

    MS. THOMAS:    I did see the video. * * *

    HARRELSON:    How long did the video take?  * * *

    MS. THOMAS:    Longer than ten, but maybe not - - 45 minutes.

* * *

    HARRELSON:    What else did you do?

    MS. THOMAS:    Well, I had gone back to Linda * * * when I went

back to her, she wasn't available.

    HARRELSON:    * * * So, what else did you do?

    MS. THOMAS:    That's all.

**{¶ 30}** Thomas testified that when Dovel entered the interim grades, she contacted the substitute teacher that Thomas had replaced to obtain the grades to enter from her, and that Thomas had no input into the students' interim grades.

**{¶ 31}** Both parties filed post-hearing briefs. Thomas asserted that the "evidence at the hearing did not establish good and just cause to terminate based on non-completion of interim and third quarter grades." She argued that, because she was "not afforded meaningful training opportunities available to others within the District, there was not good and just cause for her termination." Thomas further argued that by "expanding the scope of the hearing beyond the notice of charges and specifications," her right to due process

was violated. Finally, she argued that the Board did not establish good and just cause for termination with regard to alleged statements made by her to another staff member.

{¶ 32} In its post-hearing brief, the Board argued that Thomas failed to complete IEPs and was disciplined for the failure in October-November 2015 while at Fairview. The Board argued that Thomas failed to input grades while at Belmont, and that good and just cause was established for her termination.

{¶ 33} The referee observed that the April 19, 2016 Notice of Charges and Specifications presented four separate bases for Thomas's termination, and the referee addressed them individually. First, regarding the charge that Thomas failed to assume responsibility for performing even the basic and essential functions of her job, the referee concluded that "there is not 'good and just cause' for the termination of her teacher contract for this charge." The referee determined that, while Thomas "had been previously disciplined due to her failure to complete IEPs for some of her students, such fact is not relevant with respect to the pending charges against her." The referee noted that, as part of this charge, "DPS claimed that [Thomas] failed to perform her duties as an Intervention Specialist while at Belmont * * * as it relates to teaching her students Life Skills." The referee noted Walter's and Thomas's testimony on the issue, noting that Thomas did not reach out to Walter directly about the lack of curriculum materials, and that further "there is fault on the part of Ms. Walter in not ensuring that the teachers under her watch (Ms. Thomas in this instance) have the resources available to be successful in teaching her students."

{¶ 34} Second, regarding the charge that Thomas refused to cooperate with the building administrator and/or members of the Belmont High School team who offered

support, the referee determined there was "no question that Ms. Thomas's alleged lack of cooperation on her part was based upon her belief that she was not being accepted as part of the Belmont High School team from the Principal and staff of Belmont High School. Perhaps Ms. Thomas has a legitimate basis for such opinion." The referee noted that Walter found Thomas unapproachable, and that "Ms. Walter did not approach Ms. Thomas with any perceived concerns she had which was the basis of at least some of these charges." The referee concluded that there was a lack of cooperation by both Thomas and Walter, and "[as] a result of the lack of cooperation going both ways, there is not sufficient evidence to find that this charge is a lawful basis to find 'good and just cause' warranting termination of her teacher contract."

{¶ 35} Third, regarding the charge that a staff member reported to Walter that Thomas openly called other staff members the devil, the referee noted that it was "important to note that neither [the staff member] nor any of the students who allegedly heard this presented any such testimony at the hearing." The referee stated that, while Thomas acknowledged making the statement, "she claimed it was not made within the earshot of any students." The referee noted that Walter did not confront Thomas about the statement and that "[o]ne would think that if DPS felt that such statement was sufficient to terminate a teacher's contract, then Ms. Thomas would be informed of the Administration's concerns prior to the filing of the subject proceeding." The referee determined that there was insufficient evidence that Thomas's actions as stated in this charge were good and just cause to terminate her contract.

{¶ 36} Finally, regarding the charge that Thomas failed to complete third quarter interim and final grades for her students, the referee determined that "[a]lthough it is

uncontroverted that Ms. Thomas was late by several hours in submitting the 3rd quarter interim grades, the grades were submitted nonetheless. There were several valid reasons for Ms. Thomas being several hours tardy in submitting said interim grades." The referee noted that Thomas had only been at Belmont for a short time before the grades were due, the teacher that Thomas replaced had the grades, and Dovel had to obtain the grades from the previous teacher to be able to enter them.

{¶ 37} The referee noted, however, that the "charge by DPS relative to Ms. Thomas's failure to complete the students' 3rd quarter final grades is a different matter." The referee noted that "Thompson presented a demonstration of how a teacher would access the computer grading system. Based upon the demonstration provided, it did not seem overly complicated to operate." The referee further stated:

> There is no explanation why Ms. Thomas could not understand how to use the computer grading system. She claims that watching the video tutorial did not help her, yet Ms. Thomas was under a non-negotiable obligation to provide final third quarter grades to her students. If Ms. Thomas remains steadfast in claiming that she simply could not understand the operation of the updated system, * * * she should have engaged the services of a fellow staff member to access the system and enter the grades (as she did with Linda [Dovel] for the 3rd quarter interim grades). Simply doing nothing was not a sufficient response.

> Ms. Thomas claims that it was not her fault she didn't enter the final 3rd quarter grades, since she told Ms. Walter about her inability to enter said grades, and Ms. Walter did nothing to help[.] Ms. Thomas * * * is not

credible. Although it has already been acknowledged that Ms. Thomas and Ms. Walter did not communicate with each other and otherwise had a poor working relationship, this does not excuse Ms. Thomas's failure to perform her duties to enter grades for her students.

{¶ 38} The referee concluded that Thomas's "failure to ensure that her students' 3rd quarter final grades were entered into the computer grading system is a serious matter and DPS has proven that such failure is 'good and just cause' to terminate Ms. Thomas'[s] teacher's contract."

{¶ 39} In its "Resolution and Order of Termination," issued after it considered the referee's decision, the Board noted that, in reaching its decision, it relied "upon the entirety of the record and its own determination of what testimony and exhibits [were] reliable, probative, relevant, credible, and otherwise meritorious." The Board accepted the referee's determination that Thomas's failure to enter 3rd quarter final grades constituted good and just cause for her termination under R.C. 3319.16, and it ordered Thomas's contract be terminated.

{¶ 40} The Board further noted that Thomas "repeatedly failed to prepare individualized education plans for special education students. Such misconduct was proven at the hearing." According to the Board, Thomas's "history of misconduct, and being disciplined for that misconduct, was referenced in Hearing Officer's Guerriero's Report and Recommendation, which was referenced and incorporated into the * * * notice of intention to consider termination" of Thomas's contract. The Board rejected the referee's determination that Thomas's conduct at Fairview was not relevant to the pending charges and found that Thomas's "history of misconduct and being disciplined

for that misconduct was part of the grounds for consideration of termination of her teaching contract." The Board determined that Thomas's prior misconduct at Fairview and accompanying discipline, along with her misconduct at Belmont, constituted "good and just cause to terminate her contract under R.C. 3319.16."

**{¶ 41}** The Board further concluded that, during the week of April 11, 2016, Thomas called fellow staff members "devils" in the presence of students, and concluded that her conduct in doing so also constituted good and just cause to terminate her contract.

**{¶ 42}** The Board found that Thomas had refused to cooperate with and was insubordinate and disrespectful to her building administrator, and "refused to cooperate with other members of the Belmont High School team who had offered her support and assistance." The Board rejected the referee's conclusion that the building principal bore some responsibility for the situation and found that Thomas's misconduct constituted good and just cause for terminating her contract.

**{¶ 43}** The Board also determined that Thomas failed "to assume responsibility for performing the basic and essential functions of her position at Belmont High School. She failed to teach her students, and she otherwise failed to carry out the essential functions of her position * * *. Her misconduct constitutes good and just cause to terminate her contract."

**{¶ 44}** The Board found that Thomas's performance evaluations, as testified to by Monica Utley, and the other evidence exhibiting Thomas's misconduct, provided good and just cause to terminate her contract.

**{¶ 45}** The Board determined that Thomas's testimony "that she did not know how

to use the eSchoolPLUS TAC system to input grades [was] incredible and unworthy of belief. Pamela Thomas had used the system for many years without incident. The update to the system provided in the fall of 2015 made it more user-friendly." According to the Board, as "demonstrated during the hearing, the computer system is intuitive and easy to use. The Board determines that Pamela Thomas was insubordinate, uncooperative, obstinate, and unwilling to carry out her job duties. This constitutes good and just cause to terminate her contract."

{¶ 46} Finally, the Board specifically rejected the recommendation of the referee with respect to what he labeled Charges I, II, and III in his report. The Board determined that the conduct of Thomas with respect to Charges I, II, and III constituted good and just cause to terminate her teaching contract.

{¶ 47} Thomas filed her administrative appeal of the Board's decision in the trial court on February 15, 2017. In her first cause of action, Thomas alleged a violation of R.C. 3319.16, which governs termination of contracts by boards of education. In her second cause of action, she alleged a violation of due process. In her third cause of action, Thomas alleged a violation of Board policies. She attached the referee's report and the Resolution and Order of Termination issued by the Board to her complaint. On March 7, 2017, the Board filed an Answer/Response.

{¶ 48} On October 4, 2017, Thomas filed a "Motion for Leave to Amend the Complaint." Therein, she asserted that she was represented at the hearing before the referee by an attorney provided through her union, that she now had a different attorney, and that it was "unclear" to Thomas and her new attorney "why the union attorney failed to raise the issue of Plaintiff's disabilities during the hearing or the impact those disabilities

had on her performance." Thomas argued that the "Board also failed to consider the impact that Plaintiff's disabilities had on circumstances that led to her termination. This is true even though the Board was on notice of Plaintiff's disabilities and the impact they had on her work." Thomas argued that, at the time she "returned to her current counsel, she did not have a record of the entire proceeding to review. As a result, her complaint challenging the termination was broad and lacked many relevant details." Thomas asserted that her counsel "has now had an opportunity to review the transcript of the hearing, speak with her union Counsel, and obtain relevant background information. Based on that review, there are additional claims available to Plaintiff and she seeks to amend her complaint to pursue those additional claims." She argued that she was "seeking to add relevant facts and relevant claims to the complaint."

{¶ 49} In her attached Amended Complaint, Thomas asserted that she suffered a knee injury while employed at Dunbar High School when a fight occurred between students, and that she was subsequently diagnosed with PTSD "following the trauma she suffered during the violence that led to her knee injury." She asserted that DPS accommodated her diagnosis by removing her from Dunbar. Thomas argued that, in 2011, while at Fairview, she suffered a panic attack, in the course of which she "suffered an injury to her rotator cuff in her shoulder." According to Thomas, DPS opposed her workers' compensation claim "because it was caused by a mental disease, the panic attack and depression." She asserted that she began to have "significant difficulty with her memory following her depression diagnosis." She asserted that she was further diagnosed with attention deficit disorder.

{¶ 50} Thomas argued that she was not provided any teaching materials to teach

her life skills class at Belmont, and that she had an "especially difficult time communicating with" Walters. Thomas asserted that as "the only African-American Intervention Specialist," she did not receive "the same support or access to information that was provided to the other, all Caucasian, Intervention Specialists." She asserted that her depression and poor memory affected her ability to learn and retain information regarding "the new grading system." Thomas asserted that her "first notice that the grades were not in the system, as required, was when Defendant issued her Charges and Specification for failure to provide timely grades." The first cause of action asserted in Thomas's amended complaint was for a violation of R.C. 3319.16, the second cause of action was for disability discrimination in violation of R.C. 4112.02, and the third cause of action was for race discrimination in violation of R.C. 4112.02.

{¶ 51} On October 10, 2017, Thomas filed a "Brief in Support of the Administrative Appeal." She asserted in part that the Notice of Intent to Terminate she received from the Treasurer was not signed. Thomas also argued that the Charges and Specifications failed to establish good and just cause to terminate. She asserted that Walter was aware that she did not know how to input final third quarter grades, and failed to provide assistance before the deadline. Thomas asserted that 30 minutes after the deadline passed, Walter sent an email to several administrators seeking to discipline her. Thomas asserted that, contrary to the referee's report, she "did have a hard copy of the final 3rd quarter grades available for administrators." Regarding her alleged failure to cooperate with Walter and other staff members, Thomas asserted that when Walters learned that she "needed course material, she did absolutely nothing to provide them." Further, Thomas asserted, Walter failed to make arrangements for her to receive training

on the grading system, and merely assumed that Dovel trained her. Thomas argued that her lack of understanding of the system "was not a refusal to cooperate, but a genuine need for training."

{¶ 52} Regarding her failure to assume responsibility for her job functions, Thomas argued that "[t]his was [her] first time teaching [life skills] and she was doing so without course materials for the first time. She was also dealing with some of the most severely disabled students she had ever encountered." Thomas asserted that she sought assistance from the Office for Exceptional Children and Walters and "received absolutely no support from either and no course materials." Thomas asserted that she "did the best she could to teach the course and finish the outline she was given."

{¶ 53} Thomas noted that Walter testified to several statements by various people who allegedly made negative comments about Thomas, but those people were not called as witnesses. She noted that, although the referee sustained objections to the statements, he allowed questioning of the witness regarding these exhibits and allowed the exhibits to remain in the record. Thomas asserted that the Board introduced Bailey's statement with an unsigned statement, and that the Charges and Specifications never identified the person or persons who allegedly heard her call staff members "devils." Thomas argued that the referee "properly determined that this alleged statement did not represent good and just cause for termination."

{¶ 54} Finally, Thomas asserted that her due process rights were violated because the May 16, 2016 notice from the Treasurer was unsigned, and because the referee allowed the Board to include in the record information and evidence completely unrelated to the Charges and Specifications. She argued that "the record submitted to the Board

contained a substantial amount of information and evidence that was unrelated to the Charges and Specifications and that the Referee ruled was inadmissible at the hearing." She argued that there was "no indication that the Board has the legal knowledge to consider only that evidence that applied when it was included with the evidence that did not." Thomas further asserted that the Board exceeded its discretion when it substituted its judgment for that of the referee on the facts. She argued that the "Board's decision was based on many allegations that were not related to the hearing or the Charges and Specifications issued to [her]. They had just suspended [Thomas] for two weeks related to issues with IEP[s], but made that another basis for the termination."

{¶ 55} On October 11, 2017, the Board filed a "Memorandum in Opposition to Motion for Leave to File Amended Complaint." The Board noted that Thomas previously filed a charge of discrimination with the Ohio Civil Rights Commission, which the Commission dismissed. The Board argued that "the process for resolving the appeal is completely different from the process for litigating discrimination claims under R.C. 4112.02. The two matters simply cannot be handled together, in the same way, in the same action." The Board argued that if Thomas "is to pursue disability and race discrimination claims – the very claims that the Ohio Civil Rights Commission found to be baseless – then she should so do through a separate action." The Board attached Thomas's charges of discrimination and the OCRC's Letter of Determination dismissing the charges.

{¶ 56} On October 13, 2017, the trial court overruled Thomas's motion to amend her complaint, finding it "not well taken" without analysis.

{¶ 57} On November 3, 2017, the Board filed its brief in the administrative appeal

in support of Thomas's termination. The Board argued that Thomas failed "to take advantage of the resources available to her before the deadline for final 3rd quarter grades. * * * Among other resources, Thomas could have consulted reference guides, video tutorials, and the building technology integration coordinator who was available to sit with her and demonstrate how to input grades." According to the Board, Thomas's "failure to enter grades, prepare IEPs, and assign work for her class interfered with the educational success of students and created significant issues for students' families" and Thomas's colleagues.

{¶ 58} The Board asserted that a "core function of all intervention specialists is the creation and implementation of IEPs. * * * DPS must ensure IEPs are completed annually to ensure government funding." According to the Board, at "a formal disciplinary hearing, testimony was presented that Thomas had not completed her job duties, jeopardized the educational growth of students, placed the school in danger of being fined, inconvenienced fellow teachers, and missed close to one-hundred hours of work during the 2014-2015 school year." The board noted that Thomas was subsequently suspended for 10 days without pay.

{¶ 59} Regarding Thomas's performance at Belmont, the Board argued that it "proved to be a continuation of her misconduct from 2013-2015." The Board argued that Thomas met with the prior life skills teacher and was given a course outline, but that she "believed she did not have the materials needed to teach the class. She did not reach out to the Belmont High School Principal or other intervention specialists about her concerns." The Board asserted that Thomas instead emailed Roberson, who instructed her to contact Walters, which Thomas did not do. The Board noted that Walters emailed

Thomas requesting that she see her about her concerns. According to the Board, in "previous years, the life skills teachers had worked with one another to create lesson plans and did not require any additional material to teach the students. Principal Walter believed this would be the same for Thomas." The Board argued that Thomas did not "have students do any work in the classroom, and she failed to submit lesson plans as required of the intervention specialists. The students soon complained about not doing anything in class and being yelled at for no reason." The Board argued that Walter "received a complaint after Thomas referred to two fellow intervention specialists as 'devils' in the presence of students."

{¶ 60} The Board argued that "Thomas failed to properly complete her job duties at Belmont by failing to input third quarter grades for students." The Board argued that Thomas "claimed she was unable to enter third quarter grades for students because of a cosmetic update done to the system while she was on administrative leave. * * * Thomas averred she was incapable of entering the grades, because she was not trained to use the updated system." The Board argued that once "Thomas failed to timely enter the interim grades for the third quarter, there can be no doubt she knew she would need to learn to use the updated system before the 3rd quarter final grades were due." The Board argued that Thomas had several avenues available for her "to educate herself on the updates." The Board argued that Thomas's failure to complete third quarter grades, refusal to cooperate with building administration and other employees, failure to assume responsibility for performing basic and essential job functions, and her criticism of other staff members constituted good and just cause for her termination.

{¶ 61} Finally, the Board asserted that Thomas was given all due process afforded

by the law. According to the Board, the alleged lack of signature on her termination notice was not sufficient to invalidate the Board's resolution terminating her contract. The Board asserted that the record of the hearing included all relevant evidence and that Thomas incorrectly assumed that the Rules of Evidence applied to administrative hearings. The Board argued that the "grounds specified for consideration of the termination included her prior misconduct at Fairview." The Board argued that Thomas's argument was "akin to a criminal defendant arguing the court cannot consider his prior criminal convictions if he has already served his sentence." The Board argued that it was not bound by the referee's conclusion that the evidence of Thomas's discipline at Fairview was irrelevant to the termination proceedings.

{¶ 62} Finally, the Board argued that it acted within its discretion under R.C. 3319.16. The Board asserted that the "salient facts are not in dispute and this case is not contingent on a credibility determination." According to the Board, "Thomas largely admitted to not entering third quarter grades, failing to assume responsibility for performing basic and essential job functions, criticizing other staff members and calling them the devil, and refusing to cooperate with the administration and other Belmont team members." The Board argued that the trial court "cannot substitute its judgment for that of the Board."

{¶ 63} On November 17, 2017, Thomas filed a reply. Thomas initially asserted as follows:

> This appeal involves two separate cases instead of one and, for that reason, must be reversed by this Court. The first case is the case [the Board] presented at the hearing. The first case involved Plaintiff's

employment at both Fairview Pre-K through 8 * * * and Belmont High School * * *. The second case is the case that Plaintiff and her union were defending. The second case involved only Plaintiff's employment at Belmont.

The [Board] * * * reviewed the record in this case and they rendered a decision on the first case. * * * In other words, the Board made their decision based on the allegations against Plaintiff at both Fairview and Belmont. * * * based on considering the allegations at both schools, the Board voted to terminate Plaintiff's employment. * * *

The Referee heard the second case and made a decision, albeit flawed, regarding the second case. * * * The Referee correctly limited his review and decision to the allegations against Plaintiff in the Revised Notice of Charges and Specification dated April 19, 2016. * * * That notice only involved the allegations against Plaintiff at Belmont. * * * However, the Referee incorrectly allowed the District to clutter the record after sustaining the Union's objection on relevance. This created a record that was beyond the scope of the hearing and those issues that Plaintiff received notice of.

While it is true that an employee's past record can, and usually is, considered when a subsequent infraction occurs, that is not what happened here. Instead, Plaintiff received a two week suspension for the Fairview IEP allegations and those same allegations formed part of the reason the Board voted to terminate. * * * Disciplining an employee twice for the same alleged infraction is akin to double jeopardy in a criminal case. It violates

the collective bargaining agreement and is a denial of due process under Ohio law. * * * There is simply no basis for disciplining an employee twice for the same conduct, yet that is exactly what the Board did.

The Revised Notice of Charges and Specifications indicated that there were four (4) specific allegations against Plaintiff that formed the basis of her proposed termination. * * * Plaintiff and her union reasonably relied on that notice when preparing to defend her against those allegations. * * *

{¶ 64} Thomas argued that the referee accurately determined that the Board failed to establish three of the four specific allegations in the revised Notice of Charges and Specifications. Thomas asserted that the "record clearly shows that * * * Walter * * * did not want to deal with Plaintiff. Other than a hallway exchange when she reminded Plaintiff about third quarter grades, Walter never talked to Plaintiff. An employee that you never speak to or give any orders cannot be insubordinate."

{¶ 65} Thomas argued that the "fact that someone can use a system before it changes is only evidence that they could use the old system. It is not proof that they can successfully use a new system. To suggest otherwise is equivalent to saying someone can drive a manual transmission because they can drive an automatic." Thomas asserted that the Board suggests that she "had a duty to train herself or otherwise figure it out on her own. It is the district that had the duty to train teachers on the change to the grading system. That is the reason that Belmont teachers were provided the training early in the school year." According to Thomas, if the updated system were as easy to use as the Board claimed, "there would have been no reason to provide the other staff members training."

{¶ 66} Thomas asserted that there was no evidence that she "failed to assign work to her students. The District presented undated and unsigned written notes without testimony from any alleged witness. By denying those allegations in her testimony, Plaintiff's testimony was of greater weight than unsigned and undated notes."

{¶ 67} Thomas asserted that, instead of providing support to Thomas, DPS referred her to Walters for teaching materials, and that this system was not the system used in the past. Walters was unwilling or unable to provide any meaningful support. Thomas asserts that suggesting that it was her responsibility to figure out the grading system was contrary to the collective bargaining agreement, which requires the District to provide teaching materials. She also stated that the claim that Intervention Specialists helped each other and never need outside help was completely unsupported in the record.

{¶ 68} Thomas asserted that Walters was aware that she needed materials because Roberson emailed Walters about his contact with Thomas, so there was no reason for Thomas to contact Walters a second time. Thomas noted that Walters admitted that she never took any steps to address Thomas's alleged lack of classroom performance, and therefore, it could not rise to a level sufficient to justify termination.

{¶ 69} Thomas asserted that, like "the allegation regarding her teaching, there was no testimony on the claim that Plaintiff called her co-workers devils. Plaintiff readily admitted to making the statement, however she denied doing so loud enough for the students to hear her. Again, if this was a truly legitimate concern, Walters had an obligation to address it with Plaintiff." Since Walters failed to do so, Thomas asserted that "it cannot rise to a level sufficient to justify termination."

**{¶ 70}** Thomas argued that Walters "had the ability to direct that the grades be input again by the computer specialist. Instead, she did nothing except send an email to District administrators seeking action against Plaintiff." Thomas argued that the administrators "completely ignored the grades for an entire quarter and gave the students third quarter grades at the end of the school year. They are now arguing that it was a major infraction and worthy of terminating Plaintiff's contract." According to Thomas, the "lack of action by Walter and District administrators demonstrates that the grading issue did not have the significance they now claim." Thomas asserted that, as a new teacher, she did not have established relationships with the teachers at Belmont, and that as she developed those relationships, she got needed help and was able to input interim grades for the fourth quarter. Thomas argued that since "the Board decided [her] fate without providing sufficient notice, this Court must reverse the Board's decision."

**{¶ 71}** Thomas argued that the legislative intent of R.C. 3319.16 "to inject a neutral party into termination disputes" is "thwarted if the findings by a referee can be rejected without explanation by a school board which conducts no hearing and which does not see or hear any evidence."

**{¶ 72}** Thomas argued as follows:

An examination of the record in this case demonstrates that the notice provided to Plaintiff only apprised her of four specifications. Those specifications included 1) failure to input interim and final third quarter grades, 2) openly calling fellow staff members devils, 3) refusing to cooperate with the building administrator, and 4) failure to assume responsibility for the performing basic functions of the job. The District's

notice failed to mention the IEP issue that Plaintiff had been disciplined for at Fairview. Nevertheless, in the Board's Resolution and Order of Termination, at number 2, the Board specifically cited Plaintiff's misconduct at Fairview as part of the justification for her termination. By not including this issue in the notice, Plaintiff was denied due process.

After acknowledging that the Referee indicated the Fairview conduct was not relevant to the charges, the Board went on to say, "[s]uch misconduct was proven at the hearing." The Board then indicated "Ms. Thomas's history of misconduct at Fairview, and the discipline that accompanied same, along with her subsequent misconduct at Belmont (see below), constitutes good and just cause to terminate her contract under Ohio Revised Code Section 3319.16."

**{¶ 73}** Thomas argued that in "Paragraph 3 of the Board's decision, the Board makes it clear that they will be making finding[s] of fact without regard to the finding[s] of fact made by the Referee." She asserted that the Board indicated that it would consider matters outside those that the referee found admissible or relevant at the hearing and that there was no deference to the findings of fact by the referee or explanation for not accepting those findings. Thomas argued that the Board failed to articulate a basis for substituting its findings of fact for the referee's findings of fact. "As a result, the decision by the Board violated Plaintiff's due process rights."

**{¶ 74}** Finally, Thomas argued that the trial court denied her motion to amend her complaint without allowing her to file a reply to the Board's response. She asserted that her "discrimination and retaliation claims remain an important part of this case." Thomas

asserted that there was "an extensive history" of her disabilities in her file, and the Board clearly examined her file to reach its decision. Thomas argued that the District did not want her back after "leaving her on paid administrative leave for an entire semester. When she arrived at Belmont, they were merely looking for an excuse to terminate her employment."

{¶ 75} In the trial court's judgment, it noted that Thomas's additional claims in her amended complaint, attached to her motion to amend, "were not considered by the hearing officer, the Referee or the Board" and thus were not properly before the court. The court, therefore, declined to address Thomas's assertions that Belmont failed to accommodate her disabilities.

{¶ 76} Regarding the unsigned May 16, 2016 termination notice, the court noted that Spurlock testified that the Notice "that was sent to Thomas was signed." The court further concluded that "the requirements of R.C. 331[9].16 were substantially met even if the Notice sent to Thomas was not signed by the Treasurer. Further, Thomas was not denied due process. She was afforded a hearing, appeared at the hearing, was represented by counsel, presented evidence and has appealed the Decision of the Board." The court conclude that "this alleged de minimis defect does not invalidate the Notice."

{¶ 77} Regarding evidence allowed by the referee, the court concluded that Thomas had "failed in her initial brief to specify exactly what evidence and testimony was unrelated to the Charges and Specifications," and the court concluded that "Thomas failed to meet her burden on this argument."

{¶ 78} Regarding evidence that the Board considered, the court noted that

Thomas again "failed to specify what evidence/testimony she claims was ruled inadmissible at the hearing before the Referee." According to the court, a reading of the complete transcript of the hearing before the referee showed that there were objections made by Thomas's counsel to testimony about Thomas's prior discipline, but the referee "made no ruling during the hearing that this information and testimony was inadmissible." The court noted, however, that the referee's report stated that Thomas's failure to complete IEPs was not relevant with respect to the pending charges. The court determined as follows:

> The Court does not find well-taken Thomas' argument that she was denied due process or surprised by the evidence of her prior discipline being introduced at the hearing before the Referee on September 22, 2016. Thomas had notice that the administration was considering this as part of the basis of her termination prior to the hearing before the Referee. The court references the Report and Recommendations of the Hearing Officer (Jyllian Guerriero) dated May 16, 2016 in which the hearing officer clearly stated that the administrations [sic] was asserting that Thomas had been disciplined multiple times for similar behavior in the past and that this conduct by Thomas of not submitting the grades shows a pattern of failure to assume responsibility for the basic functions of her position.

> That being said, the Court finds that her prior failure to submit IEP's was not specifically listed in the Notice or Revised Notice as grounds for her termination. The Court cannot say that this would fall within the catch-all phrase "failure to assume responsibility for performing even the basic and

essential function of your job" that is listed in the Notice(s) because the specifications clearly list what behavior the administration was considering as to the charge and her prior discipline was not listed. The Court therefore finds Thomas' argument well-taken that this evidence should not have been considered by the Board. The court GRANTS Thomas' argument based on this. The Court will not consider this evidence/testimony when ruling on whether or not there was just cause to terminate Thomas.

(Footnotes omitted.)

{¶ 79} The court next addressed Thomas's argument that the Board exceeded its discretion when it substituted its judgment for that of the referee. The court concluded that it was not a denial of Thomas's due process rights for the Board to reject the Referee's recommendation on Charges I, II, and III. The court, however, considered the merits of the Board's finding of just cause to terminate Thomas "under each specification in the next section * * *."

{¶ 80} Regarding Charge I, Thomas's alleged failure to assume responsibility for performing even the basic and essential functions of her job, the court noted Thomas's argument that she sought the assistance of the Office for Exceptional Children and the building principal to no avail. The court noted that the Board's determination was based in part on evidence of Thomas's "prior misconduct and discipline." The court noted the Board's determination that "Thomas repeatedly failed to prepare individualized education plans for special education students," and stated that such misconduct was proven at the hearing. The court also noted the Board's determination that Thomas's "history of misconduct at Fairview, and the discipline that accompanied same, along with her

subsequent misconduct at Belmont * * *" constituted good and just cause. The court concluded that "this information should not have been considered by the Board." The court stated:

> The evidence before the court shows that Thomas had never taught a Life Skills course and was given a 5 page outline when she arrived at Belmont. Thomas complained to Dr. Roberson that she did not have course materials. Thomas did not initially contact Ms. Walters for course materials, but Ms. Walters was aware that Thomas was requesting course materials and Ms. Walters did not approach Thomas to discuss this issue. There is no evidence that any students or parents complained about Thomas' method of teaching the Life Skills course.
>
> The Court finds that the Order for termination by the Board as to this Charge is not supported by the evidence. The Court will not consider the prior discipline or charges against Thomas. The court finds that there is not "substantial and credible evidence" in support of this Charge. Thomas' appeal is GRANTED as to this charge. The decision of the Board is VACATED as to this charge.

(Footnotes omitted.)

**{¶ 81}** Regarding Charge II, Thomas's alleged refusal to cooperate with the building administrator and/or members of the Belmont High School team, the court noted that the Board based its determination that Thomas refused to cooperate in part on the evidence of Thomas's "prior misconduct and discipline," and that "this information should not have been considered by the Board." The court found that "the evidence at the

hearing shows that both Ms. Walter and Ms. Thomas failed to work with each other, [and] the Court cannot say nor does the evidence support a finding that the blame lay totally with Thomas." According to the court, the evidence also showed that Thomas "did in fact accept the help of Linda Dovel in entering the 3rd quarter interim grades." The court concluded that the order for termination by the Board as to Charge II was not supported by the evidence, refused to consider the prior discipline in its decision, and concluded that Thomas's appeal was "GRANTED as to this Charge. The Decision of the Board is VACATED as to this Charge."

{¶ 82} Regarding Charge III, that Thomas allegedly called other staff members "devils" and criticized them, the court determined as follows:

Assuming that the Court can consider the statements by Mr. Bailey despite the sustained objection to such statement, the Court does not find that there was "substantial and credible evidence" in support of this charge. Thomas does not deny making this statement. There is a dispute in the testimony as to whether or not any students heard the statement by Thomas that other teachers were "devils." The Referee found Thomas' testimony about the volume of her voice credible. Ms. Walter testified about this incident, but she was not present. Her testimony is based on what another teacher, Mr. Bailey allegedly told her. Mr. Bailey did not testify at the hearing.

{¶ 83} The court concluded that the order for termination by the Board as to Charge III was not supported by the evidence, and that there was not "substantial and credible evidence" in support of this charge. The court found that there was "insufficient

evidence that Ms. Thomas's actions as stated in this Charge [provided] 'good and just cause' to terminate Thomas." The court granted Thomas's appeal as to Charge III and vacated the Board's decision as to this charge.

{¶ 84} Finally, regarding Charge IV, Thomas's alleged failure to enter third quarter interim grades and third quarter final grades, the court initially addressed Thomas's failure to enter the interim grades.

> The Court finds that Thomas' entering the 3rd quarter interim grades a few hours past the deadline is not good and just cause to terminate Thomas. The evidence before the Court establishes that Thomas did not have the grades for the students from the substitute who taught the students prior to Thomas' arrival at Belmont, and Thomas would have only had a week with the students before the interim grades were due into the system.

{¶ 85} The court concluded that the order for termination by the Board as to Charge IV was not supported by the evidence, and that there was insufficient evidence that Thomas's actions as stated in the charge showed "good and just cause" to terminate her. The court granted her appeal and vacated the decision of the Board as to Thomas's failure to enter 3rd quarter interim grades.

{¶ 86} Regarding third quarter final grades, the court determined:

> * * * The record before the Referee, the Board and the Court establishes that Thomas had been entering grades into the eSchoolPLUS TAC system without a problem since 2011. This system was updated at the beginning of the 2015/2016 school year, but the evidence also established that the 2015/2016 upgrade did not have a major change to the

system, just made it more user friendly. Thomas herself testified that she knew that 3rd quarter final grades would be due and that she would be unable to enter them based on her claim that she didn't know how. Final grades are critical to the students.

{¶ 87} The court concluded that Thomas's failure to enter third quarter final grades "constituted good and just cause for her termination. There was not the same issue as with the interim grades when 3rd quarter final grades were due. Thomas had [then] taught the kids and did not need the grades from the substitute teacher. Further, the 3rd quarter final grades were not entered at all." The court found there was substantial and credible evidence in the record in support of this charge and that the Board's decision to terminate Thomas based on her failure to enter 3rd quarter final grades was supported by the evidence and was not against the weight of the evidence. The court overruled Thomas's appeal as to this claim and affirmed the decision of the Board as to the Thomas failure to enter third quarter final grades.

{¶ 88} On appeal to this court, Thomas raises three assignments of error. We initially note the relevant procedures regarding the termination of public school employees, as set forth by Ohio's Third Appellate District in *Elsass v. St. Marys City School Dist. Bd. of Edn.*:

> The Ohio Teacher Tenure Act, contained in R.C. Chapter 3319, governs the employment of public school teachers in Ohio. R.C. 3319.16 delineates the procedural requirements that must be followed before a teacher's contract may be terminated for disciplinary reasons. The statute specifies that "[t]he contract of any teacher employed by the board of

education of any * * * school district may not be terminated except for good and just cause." R.C. 3319.16.

Before terminating a contract, the employing board must furnish the teacher with a written notice of its intention to terminate the contract containing the grounds for action. *Id.* The teacher may then file a written demand for a hearing "before the board or before a referee." *Id.* * * *

If a hearing is conducted by a referee, the referee must file a report. After considering the referee's report, "the board, by a majority vote, may accept or reject the referee's recommendation on the termination of the teacher's contract." *Id.* When the hearing has been conducted by a referee, a board must accept the referee's findings of fact, unless they are against the greater weight or preponderance of the evidence. *Aldridge v. Huntington Local School Dist. Bd. of Edn.* (1988), 38 Ohio St.3d 154, 527 N.E.2d 291, at paragraph one of the syllabus. However, the school board has the discretion to accept or reject the referee's recommendation, unless the school board's decision is contrary to law. *Id.* at paragraph two of the syllabus.

A teacher whose contract has been terminated may appeal the board's decision to the local court of common pleas by filing a complaint against the board, alleging the facts "upon which the teacher relies for a reversal or modification of the order of termination of contract." R.C. 3319.16. After the common pleas court examines the transcript and record of the hearings, it "shall hold such additional hearings as it considers

advisable, at which it may consider other evidence in addition to the transcript and record." *Id.*

After the hearing, the trial court shall "grant or deny the relief prayed for in the complaint as may be proper in accordance with the evidence adduced in the hearing." *Id.* Either the teacher or the board may appeal from the court of common pleas' decision. *Id.*

Our appellate review of the trial court's decision in this special proceeding is "extremely narrow" and "strictly limited to a determination of whether the common pleas court abused its discretion." See *James v. Trumbull Cty. Bd. of Edn.* (1995), 105 Ohio App.3d 392, 396, 663 N.E.2d 1361. "Absent an abuse of discretion, an appellate court may not engage in what amounts to a substitution of the judgment of the common pleas court." *Id.* "Therefore, appellate courts must take great care in applying the abuse of discretion standard, making sure that a reversal occurs only where the trial court truly acted unreasonably or unconscionably." *Johnson v. Edgewood City School Dist. Bd. of Edn.,* 12th Dist. No. CA2008-09-215, 2009-Ohio-3827, ¶ 9. Most instances of abuse of discretion result from decisions which are "simply unreasonable," having "no sound reasoning process that would support [the] decision." *Id.* at ¶ 11, quoting *James* at 396[.]

* * *

* * * Additionally, the Ohio Supreme Court has repeatedly held that due deference must be accorded to the findings and recommendations of

the referee because it is the referee who is in the best position to observe the demeanor of the witnesses and weigh their credibility. *Jones v. Franklin Cty. Sheriff* (1990), 52 Ohio St.3d 40, 43, 555 N.E.2d 940, 944, citing *Aldridge*, 38 Ohio St.3d at 157, 527 N.E.2d at 293; *Graziano v. Amherst Exempted Village Bd. of Edn.* (1987), 32 Ohio St.3d 289, 293, 513 N.E.2d 282, 285.

Although the common pleas court's review of a board's decision is not de novo, R.C. 3319.16 does empower the court to weigh the evidence, hold additional hearings if necessary, and render factual determinations. *Graziano*, 32 Ohio St.3d at 293, 513 N.E.2d at 285; *Katz* [*v. Maple Hts. City School Dist. Bd. of Edn.,*], 87 Ohio App.3d [256] at 260, 622 N.E.2d 1 [(8th Dist.)]. However, nothing in the statute absolutely requires the reviewing court to do so. See R.C. 3319.16 (stating that the court "shall hold such additional hearings *as it considers advisable,* at which it *may* consider other evidence in addition to the transcript and record.") (Emphasis added.) A common pleas court may reverse a board's order of termination of a teacher's contract only where it finds that the order is not supported by or is against the weight of the evidence. *Hale v. Lancaster Bd. of Edn.* (1968), 13 Ohio St.2d 92, * * *, 234 N.E.2d 583, paragraph one of the syllabus; *Oleske v. Hilliard City Sch. Dist. Bd. of Edn.* (2001), 146 Ohio App.3d 57, 62, 764 N.E.2d 1110. If there exists "substantial and credible evidence" in support of the charges of the Board, and "a fair administrative hearing is had, the [common pleas court] cannot substitute its judgment for the

judgment of the administrative authorities." *Bertolini v. Whitehall City Sch. Bd. of Edn.* (2000), 139 Ohio App.3d 595, 604, 744 N.E.2d 1245, quoting *Strohm v. Reynoldsburg City School Dist. Bd. of Edn.* (Mar. 31, 1998), Franklin App. No. 97APE07-972. Moreover, courts generally hold that, absent a claim that the school board violated a statutory right or constitutional obligation, a trial court may not substitute its judgment for that of the board. See *Id.; Kitchen v. Bd. of Edn. of Fairfield [C]ity School Dist.*, 12th App. No. CA2006-09-234, 2007-Ohio-2846.

(Footnotes omitted.)   *Elsass v. St. Marys City School Dist. Bd. of Edn.*, 3d Dist. Auglaize No. 2-10-30, 2011-Ohio-1870, ¶ 28-33, ¶ 42-43.

**{¶ 89}** Thomas's first assigned error is as follows:

THE TRIAL COURT ERRED IN DENYING APPELLANT LEAVE TO AMEND HER COMPLAINT, BECAUSE THERE WERE ADDITIONAL RELEVANT FACTS AND CLAIMS REGARDING APPELLANT'S TERMINATION AND THERE WAS NO PREJUDICE TO APPELLEE.

**{¶ 90}** According to Thomas, the trial court "denied [her] request to amend her complaint to include her PTSD diagnosis, the impact that diagnosis had on her performance, and the discrimination that she believes was the root cause of the action against her," and the denial constituted an abuse of discretion.  Thomas asserts that while "the trial court had a duty to examine all relevant evidence, it denied her leave "to include that relevant evidence."   Thomas asserts that, although the Board opposed her motion to amend, it "failed to identify any bad faith, undue delay, [or] undue prejudice to them."   She argues that she "filed her motion immediately after it became clear there was

relevant evidence absent from the record," and that she was "denied a full and fair review of the relevant facts" by not being allowed to amend her complaint   Thomas argues that she "was entitled to argue the impact her PTSD had on her ability to learn the new grading system and her demeanor in the hallway exchange on the day grades were due."   She asserts that the "trial court had a duty to examine all relevant evidence in determining whether good and just cause existed."   Thomas asserts that, by omitting the impact of her PTSD symptoms, the trial court's decision supporting termination was based on "an incomplete record."

{¶ 91} The Board responds that, "[b]efore discussing why the motion to amend was properly denied, it is important to briefly address the Ohio Civil Rights Commission * * * charge."   The Board notes that the OCRC investigated Thomas's allegations of race and disability discrimination, and on February 2, 2017, issued a Letter of Determination dismissing the charge.   The Board further notes that the OCRC "advised Thomas of her right to pursue judicial review under R.C. 4112.06," and that she did not do so; instead, she sought leave to amend her complaint eight months after she filed it.

{¶ 92} The Board argues that, pursuant to Civ.R. 15, "[j]ustice did not mandate leave to amend in this case.   This is particularly true when Thomas was not prejudiced by the denial of the motion for leave to amend the complaint.   She had the option of filing a separate action – she just chose not to do so."

{¶ 93} The Board further asserts that "it is unreasonable to combine a[n] R.C. 3319.16 appeal with discrimination claims."   According to the Board, the "process for resolving R.C. 3319.16 appeals is completely different from the process for litigating R.C. 4112.02 discrimination claims.   Discrimination claims involve substantial discovery,

potential preliminary dispositive motions, and almost certainly motions for summary judgment." The Board asserts that "[l]itigating such claims through a jury trial would likely take at least 12 to 18 months."

**{¶ 94}** The Board asserts that R.C. 3319.16 provides that an appeal pursuant to the statute " 'shall be advanced and heard without delay.' A court need only review the briefing, review the record from the hearing below, and issue a decision. In other words, appeals are to be resolved expeditiously and, as a matter of practice, they are almost universally decided based upon the record established before the referee." The Board argues "[t]hat is especially true in a case like this, where both sides agreed no additional evidentiary hearing was needed given the hearing before the referee was held over the course of three days, Thomas was represented by counsel, and the hearing resulted in a lengthy transcript with numerous exhibits."

**{¶ 95}** Finally, the Board asserts that "[l]eave to amend the complaint to add discrimination claims was not necessary to introduce evidence regarding post-traumatic stress disorder," PTSD was never mentioned during the hearing, and Thomas's allegations regarding that diagnosis "should not be considered, as there is no evidence regarding this issue before the court." The Board argues that, pursuant to R.C. 3319.16, "Thomas could have asked the trial court for an additional hearing to introduce evidence regarding her supposed PTSD diagnosis. She did not. Instead, she consented to briefing the R.C. 3319.16 appeal based on the record created during the hearing before the referee."

**{¶ 96}** On September 25, 2018, Thomas filed a Reply Brief, which we have considered; it reiterates her conclusions that the trial court erred.

**{¶ 97}** Civ.R. 15(A) provides:

A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier.   In all other cases, a party must amend its pleading only with the opposing party's written consent or the court's leave.   The court shall freely give leave when justice so requires.

**{¶ 98}**   As this Court has previously noted:

* * * Civ.R. 15(A) indicates that leave of court shall be "freely given" for amendment of pleadings. "The grant or denial of leave to amend a pleading is discretionary and will not be reversed absent an abuse of discretion.   An abuse of discretion connotes a decision that is unreasonable, arbitrary or unconscionable." (Citations omitted.)   *State ex rel. Askew v. Goldhart* (1996), 75 Ohio St.3d 608, 610, 665 N.E.2d 200. Furthermore, while Civ.R. 15 allows for liberal amendment, courts may deny motions to amend when there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261.

*Englewood v. Turner*, 178 Ohio App.3d 179, 2008-Ohio-4637, 897 N.E.2d 213, ¶ 49 (2d Dist.).

**{¶ 99}** The trial court did not indicate its reasons for the denial of Thomas's motion

to amend her complaint beyond finding it "not well taken." We conclude that an abuse of discretion in the trial court's decision is not demonstrated. As noted above, in her amended complaint, Thomas sought to introduce facts regarding her PTSD diagnosis and allege additional claims of disability and racial discrimination. We note that in her instant brief, Thomas appears to rely upon her PTSD diagnosis more as a defense to her performance as an intervention specialist and less as a basis for the discrimination to which she alleges she was subjected.

{¶ 100} As the Board points out, Thomas's motion was filed eight months after her February 15, 2017 initial complaint/appeal, and we conclude that the record supports a finding of undue delay on her part. We further conclude that Thomas's assertion that she filed her "motion immediately after it became clear there was relevant evidence absent from the record" lacks merit. Thomas was clearly aware of her PTSD diagnosis (which occurred prior to her employment at Belmont) and any perceived disability or racial discrimination at the time the Charges and Specifications were issued against her. This conclusion is supported by the fact that she does not dispute that the OCRC dismissed her claims of racial and disability discrimination in February 2017, before she filed her initial complaint. Finally, Thomas filed an "Amended Complaint with Jury Remand" (sic), i.e., she sought a jury trial on the new claims, and we agree with the Board that remanding the matter for a jury trial on the additional claims would have prejudiced the Board's ability to obtain a final resolution of Thomas's R.C. 3319.16 appeal "without delay." R.C. 3319.16. For the foregoing reasons, Thomas's first assignment of error is overruled.

{¶ 101} Thomas's second assignment of error is as follows:

THE TRIAL COURT ERRED IN FINDING NO DUE PROCESS

VIOLATION BY APPELLEE WHEN APPELLANT WAS NOT GIVEN WRITTEN NOTICE THAT THE BOARD WOULD CONSIDER HER CONDUCT AT FAIRVIEW WHEN CONSIDERING HER TERMINATION.

{¶ 102} Thomas argues that her "due process rights were violated throughout this process." First, the May 16, 2016 notice from the Treasurer was unsigned, which made it invalid.

{¶ 103} Second, Thomas argues that the Board relied on a significant amount of evidence, in the form of testimony and exhibits, regarding her alleged misconduct at Fairview, and she did not have the opportunity to prepare a defense to this evidence, because she never received notice of it. Thomas asserts that she was accordingly deprived "of her right to prepare and defend herself at the hearing. It also created a much different record than the case before the Referee." Thomas asserts that she "was denied the fundamental protection that notice should provide. The Board used those additional allegations as part of their rationale for termination."

{¶ 104} Third, Thomas asserts that "the record submitted to the Board contained a substantial amount of information and evidence that the referee ruled was inadmissible at the hearing. A review of the record on appeal shows that much of the IEP related evidence and testimony was found to be inadmissible during the hearing." Thomas argues that it is not clear why the referee, after declaring it was not relevant, allowed the Board to introduce this information into the record. She asserts that there "is no indication that the board ha[d] the legal knowledge to consider only that evidence that applied when it was included with evidence that did not."

{¶ 105} Fourth, Thomas argues that the evidence regarding her time at Fairview

was not properly before the Board and should not have been considered when making the decision. The Board, "admittedly, relied upon the 'entirety of the record . . .' when deciding whether termination was appropriate."

{¶ 106} Finally, Thomas asserts that the Board exceeded its discretion when it substituted its judgment for that of the referee on the facts, because it was required to accept the referee's findings of fact unless they were against the greater weight, or preponderance, of the evidence. According to Thomas, "the Board's decision was based on many allegations that were not related to the hearing or the Charges and Specifications issued" to her. The Board had already suspended Thomas for two weeks related to IEPs but made that another basis for the termination. "The Board clearly exceeded its authority in how it decided the issue of [Thomas's] termination." Thomas further asserts that "it is unclear whether a majority of the board would have voted to terminate. It is also worth noting that the language in the resolution was only signed by the board president."

{¶ 107} The Board responds that Thomas's claim that "she was denied due process is baseless." The Board argues that it complied with "the procedural requirements due teachers in contract termination disputes." The Board argues that "Thomas was afforded a three-day hearing before a referee, was represented by counsel, and was permitted the opportunity to call witnesses and present evidence."

{¶ 108} The Board asserts that the "alleged lack of a signature on the termination notice" was not sufficient to invalidate the Board's termination resolution. The Board asserts that "even if the notice was not signed, the requirements of R.C. 3319.16 were substantially met since the notice identified the grounds for termination." According to

the Board, "Thomas cannot show prejudice, as the alleged *de minimis* defect in no way impacted [her] ability to defend herself." Regarding the lack of signatures of the Board members on the termination resolution, the Board asserts in a footnote that there "is no requirement the Board sign the resolution when the minutes for the meeting reflect each Board member present voted in favor of the resolution."

{¶ 109} The Board argues that the record from the hearing included relevant evidence regarding Thomas's prior misconduct at Fairview. The Board argues that "the notice of the grounds for her termination included her failure to assume responsibility for the basic functions of her position, which included her prior misconduct at Fairview." The Board argues that just "as a court is permitted to consider a defendant's criminal history in sentencing, the Board is permitted to consider Thomas's prior misconduct in determining whether good and just cause existed to terminate her contract."

{¶ 110} The Board asserts that the "Rules of Evidence do not apply to administrative hearings." According to the Board, Thomas's "argument also ignores the distinction between the role of the referee and the role of the Board in R.C. 3319.16 cases." The Board argues that the referee ascertained that "Thomas was placed on administrative leave and ultimately suspended for ten days at Fairview for her failure to complete students' IEPs." The Board notes that the referee "then recommended the Board not consider the prior misconduct as relevant to the termination." The Board argues that it "was not bound by the referee's recommendation that the evidence was irrelevant," and that it "acted within the scope of its authority under R.C. 3319.16 in determining the cumulative effect of the misconduct at Fairview was relevant and should be considered by the Board."

{¶ 111} Finally, the Board asserts that it "acted within the scope of its discretion under R.C. 3319.16." The Board argues that the "referee in R.C. 3319.16 hearings does not make a 'judgment' but rather makes a recommendation, and the Board 'is allowed to accept or reject the recommendation.' " The Board asserts that the "only limitation on the Board in R.C. 3319.16 proceedings is the Board is not permitted to reject a referee's findings of fact unless the findings are against the greater weight or preponderance of the evidence. * * * That limitation is not at issue here." The Board asserts that it "was free to determine the significance of the facts – i.e. whether the facts justified termination – and this Court cannot substitute its judgment for that of the Board."

{¶ 112} As noted in *Elsass,* "[d]ue process rights guaranteed by the United States and Ohio Constitutions apply in administrative proceedings, such as a teacher termination." *Elsass,* 3d Dist. Auglaize No. 2-10-30, 2011-Ohio-1870, ¶ 58. "R.C. 3319.16 provides for the normal due process safeguards, giving the teacher notice and an opportunity for a hearing, and including a right to appeal the board's decision to the court of common pleas." *Id.*

{¶ 113} R.C. 3319.16 provides that "[b]efore terminating any contract, the employing board shall furnish the teacher a written notice signed by its treasurer of its intention to consider the termination of the teacher's contract with full specification of the grounds for such consideration," and the hearing before the referee "shall be confined to the grounds given for termination." We agree with the trial court that the lack of signature on the notice presented at the hearing did not invalidate the notice, and that Thomas was not denied due process, since she was afforded a full hearing, was represented by counsel, presented evidence and exercised her right to appeal to the court of common

pleas.

{¶ 114} The majority of Thomas's arguments under this assignment of error address her assertion that her "time at Fairview was not properly before the board" and "should not have been considered when making the decision." As noted above, the trial court rejected as not well-taken Thomas's "argument that she was denied due process or surprised by the evidence of her prior discipline being introduced at the hearing" before the referee. In the succeeding paragraph, however, the court concluded that her "prior failure to submit IEP's was not specifically listed in the Notice or Revised Notice as grounds for her termination," and the court found "Thomas' argument well-taken that this evidence should not have been considered by the Board." We conclude that since the trial court ultimately agreed with Thomas's argument that the Board should not have considered evidence of her prior discipline at Fairview related to the IEPs as a basis for termination, and did not consider the evidence itself, a violation of due process was not demonstrated.

{¶ 115} Finally, regarding Thomas's assertion that it was unclear whether the "entire" Board supported her termination, R.C. 3319.16 allows the Board, "by a majority vote," to "accept or reject the referee's recommendation on the termination of the teacher's contract"; thus, whether the entire Board agreed was not relevant. We further conclude that Thomas waived this argument, since she did not raise it in her appeal to the trial court.

{¶ 116} The second assignment of error is overruled.

{¶ 117} Thomas's third assignment of error is as follows:

THE TRIAL COURT ERRED IN FINDING FAILURE TO INPUT

GRADES FOR ONE QUARTER WAS GOOD AND JUST CAUSE FOR TERMINATION UNDER OHIO REVISED CODE SECTION 3319.16.

**{¶ 118}** Thomas asserts that, on the morning the final 3rd quarter grades were due, before the grading deadline, she informed Principal Walters that she could not enter grades. "Approximately thirty minutes after the grading deadline passed, Principal Walters sent an email to several Administrators seeking discipline" against Thomas. Thomas argues the Walter had a duty to ensure that student grades were recorded, and as the lead administrator, she could have taken steps to have a different teacher or the technology coordinator enter student grades for Thomas. According to Thomas, if "it was the major violation [the Board] now claims, Ms. Walters and every other administrator she notified had a duty to ensure the grades were entered." Thomas asserts that the alleged violation "certainly did not rise to the level to warrant the termination of a tenured teacher." She asserts that as "a matter of record, the Belmont administrators were assisting the IEP substitute, prior to [Thomas's] arrival, to enter student grades."

**{¶ 119}** The Board responds that, throughout her brief, "Thomas argues the Board is bound by the referee's findings and recommendations; however, when it comes to the referee's recommendation the Board terminate Thomas's employment for failure to enter third quarter grades, Thomas changes her tune." The Board asserts that it and the referee considered and rejected all of Thomas's excuses for why she failed to enter third quarter grades. The Board argues that the "assistance offered to the prior substitute is irrelevant. The substitute did not have access to the computer grading system. Further, if anything, the fact that the prior substitute, despite not having access to the computer grading system, ensured the grades were timely entered only supports termination." The

Board argues that "Thomas not only did not do her job, she did not even bother to seek assistance."

{¶ 120} We conclude that the trial court correctly found that Thomas was experienced in entering grades into the eSchoolPLUS TAC system. The updated system was demonstrated to the referee, and the court noted that the update "just made it more user friendly." Thomas acknowledged that she knew the third quarter final grades would be due, and in the four-week time period between the interim grades and final grades, she made scant effort to input them on time, namely by allegedly viewing a video and requesting Dovel's help (although apparently not with persistence). Unlike with the interim grades, Thomas had taught the students and did not need to obtain the grades from the previous teacher to enter them. As the trial court noted, final grades are critical to the students. We conclude the trial court did not abuse its discretion in concluding that the Board's decision to terminate Thomas based on her failure to enter third quarter final grades was supported by the evidence and not against the manifest weight of the evidence. In other words, Thomas's failure to enter the final grades was good and just cause for termination.

{¶ 121} Thomas's third assignment of error is overruled.

{¶ 122} We note that in its brief, the Board asserts a "cross-assignment of error," pursuant to App.R. 3(C)(2), as follows:

THE TRIAL COURT ERRED IN VACATING THE BOARD'S TERMINATION DECISION AS TO CHARGES I, II, AND III.

{¶ 123} App.R. 3(C)(2) provides: "A person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but

who does not seek to change the judgment or order is not required to file a notice of cross appeal or to raise a cross-assignment of error."

**{¶ 124}** The Board argues that Thomas "failed to assume responsibility for performing the basic and essential functions of her job," "failed to cooperate with the building administrator and/or members of the Belmont High School Team," and "called other staff members the 'devils' and criticized them." Since the Board is not attempting to modify Thomas's ultimate termination, and since we have determined that Thomas was subject to termination for failing submit third quarter final grades, we need not address the Board's "cross-assignment of error."

**{¶ 125}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P. J. and HALL, J., concur.

Copies sent to:

Julius L. Carter
Brian L. Wildermuth
Lauren K. Epperley
Hon. Timothy N. O'Connell